UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| HAREL PLUMBING & HEATING, INC., a Nevada corporation,<br><br>                              Plaintiff,<br><br>     v.<br><br>CLARK COUNTY, a political subdivision of the State of Nevada; CLARK COUNTY BOARD OF COMMISSIONERS; CLARK COUNTY COMPREHENSIVE PLANNING DEPARTMENT,<br><br>                              Defendants. | Case No. 2:19-cv-00735-KJD-BNW<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

Before the Court are competing motions for summary judgment. Defendants filed their Motion for Summary Judgment (ECF #31). Plaintiff responded in opposition (ECF #41) and Defendants replied (ECF #44). Plaintiff filed a Motion for Partial Summary Judgment (ECF #32). Defendants responded in opposition (ECF #42) and Plaintiff replied (ECF #47).

I.      Factual and Procedural Background

Plaintiff Harel Plumbing & Heating, Inc. ("Harel"), owned by Tal Harel ("Mr. Harel") brought this action after Mr. Harel's request to erect a billboard on his property was denied. (ECF #31, at 6). Mr. Harel purchased multiple parcels of land located at Valley View and Maule, near the I-215 freeway. Id. at 5. Mr. Harel originally intended to build single-family residences on the property but changed his plans after analyzing the cost to connect the property to water and sewage lines. (ECF #32, at 7). Mr. Harel met with officials at the Las Vegas Valley Water District ("LVVWD") to discuss equipment and facilities installed by the LVVWD next to Mr. Harel's property that interfered with his intended driveway design. Id. at 8. LVVWD would not sell Mr. Harel the plot where the equipment was installed but offered to sell him a portion of four

other parcels that had been condemned for the freeway. Id. The LVVWD official mentioned to Mr. Harel that the property would be great for billboards. Id. The County approved a dedication deed severing the portions of the parcels not being used for the freeway and conveyed them to Mr. Harel by way of quitclaim deed. Id. Mr. Harel had a plan drawn up to construct a billboard on one of his newly acquired parcels. Id.

In October 2018, while attempting to construct his billboard, Mr. Harel met with Nancy Amundsen ("Amundsen"), Clark County's Director of Comprehensive Planning. (ECF #31, at 6). Amundsen told Mr. Harel that there was a ban on billboards in Clark County and that he would not be able to construct one on his property. Id. The Clark County Board of Commissioners passed an ordinance in 2004 prohibiting the construction and operation of all new off-premises signs in unincorporated Clark County. Id. at 5. On December 5, 2018, the Clark County Board of Commissioners amended the ban and permitted resort hotels to conduct off-premises advertising after obtaining approval of an overall sign package. Id. at 5. Off-premises signs are defined as "any display indicating the business transacted, services rendered, goods sold or produced, name of business, person, firm or corporation which is not available or located on the same premises as the display." (ECF #32, at 15). On-premises signs are defined as "any display, strictly incidental to a lawfully approved and commenced use of the premises on which it is located, that indicates the business transacted, services rendered, or goods sold or produced on the premises." Id. Put simply, if a sign advertises for business that takes place on the same property as the sign, it is an on-premises sign. If it advertises for a business or event taking place elsewhere, it is an off-premises sign.

After Mr. Harel was told by Amundsen that he could not construct a billboard on his property, he attempted to file an application to rezone his property for a billboard. (ECF #32, at 9). On February 19, 2019, a representative of Clark County emailed Mr. Harel to inform him that the county would not accept his application for a billboard. Id. Harel then filed this action, alleging that the billboard ban violates his First Amendment rights.

II.     Legal Standard

Summary judgment may be granted if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. See Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. See Celotex, 477 U.S. at 323. The burden then shifts to the nonmoving party to set forth specific facts demonstrating a genuine factual issue for trial. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

All justifiable inferences must be viewed in the light most favorable to the nonmoving party. See Matsushita, 475 U.S. at 587. However, the nonmoving party may not rest upon the mere allegations or denials of his or her pleadings, but he or she must produce specific facts, by affidavit or other evidentiary materials as provided by Rule 56(e), showing there is a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

III. Analysis

The parties disagree regarding the appropriate level of scrutiny to apply to this constitutional challenge. Harel argues that strict scrutiny should apply because the billboard ban is a content-based restriction on speech. Harel bases his argument on the Supreme Court's decision in Reed v. Town of Gilbert. 576 U.S. 155 (2015). Clark County argues that restrictions on commercial speech have always required intermediate scrutiny and the application of the Central Hudson test. The County argues that Reed did not alter that framework. Harel disagrees and argues that "the crucial first step in the content-neutrality analysis [is] determining whether the law is content neutral on its face." Reed, 576 U.S. at 165. Laws that are content based on their face are "subject to strict scrutiny." Id. The on-premises and off-premises designation, according to Harel, demonstrates that the law is content based on its face because it cannot be determined if the sign is an on-premises or off-premises sign without reading the message displayed on the sign. A law may be content based "if it requires authorities to examine the contents of the messages to see if a violation has occurred." Tschida v. Motl, 924 F.3d 1297, 1303 (9th Cir. 2019). Harel's argument that a violation would be unknown until a sign was examined to determine if the business advertised took place on the premises is correct. However,

the Ninth Circuit has "rejected the notion that Reed altered Central Hudson's longstanding intermediate scrutiny framework." Contest Promotions, LLC v. City and Cnty. of San Francisco, 874 F.3d 597, 601 (9th Cir. 2017). "[A]lthough laws that restrict only commercial speech are content based, such restriction need only withstand intermediate scrutiny." Id. (quoting Lone Star Sec. & Video, Inc. v. City of Los Angeles, 827 F.3d 1192, 1198 n.3 (9th Cir. 2016)). Therefore, like the Contest Promotions court, the Court "reject[s] Plaintiff's argument that review more searching than intermediate scrutiny applies here." Id. The Court will analyze the billboard regulation under the Central Hudson test.

### A. Central Hudson Test

Intermediate scrutiny for regulations of commercial speech applies the Central Hudson test. The test contains the following elements:

> (1) The First Amendment protects commercial speech only if that speech concerns lawful activity and is not misleading. A restriction on otherwise protected commercial speech is valid if it (2) seeks to implement a substantial governmental interest, (3) directly advances that interest, and (4) reaches no further than necessary to accomplish the given objective.

Metromedia, Inc. v. City of San Diego, 453 U.S. 490, 507 (1981) (citing Central Hudson Gas & Electric Corp. v. Public Service Comm'n of New York, 447 U.S. 557 U.S. 563–66 (1980)).

First, the County's billboard ban and subsequent amendment of the ban, concern the construction of off-premises signs. Mr. Harel's property is vacant and zoned for residential use so the billboard would have been an off-premises sign under the regulations influence. There is no argument that the speech prohibited by the ban concerned unlawful activity or was misleading. Therefore, the regulation satisfies the first prong of the Central Hudson test.

Second, the ban must seek to implement a substantial government interest. The County's asserted interests in the billboard ban are to maintain aesthetic value and promote traffic safety. The Ninth Circuit has found these interests to be substantial. "[A] locality's asserted interests in safety and aesthetics . . . are substantial." Contest Promotions, LLC v. City and Cnty. of San Francisco, 874 F.3d 597, 601 (9th Cir. 2017). As such, the regulation satisfies the second prong of the Central Hudson test.

Third, the governmental regulation must directly advance its stated interests. In

considering this prong, the court "must look at whether the [County's] ban advances its interest in its general application, not specifically with respect to [the defendant]." Contest Promotions, 874 F.3d at 602 (quoting Metro Lights, LLC v. City of Los Angeles, 551 F.3d 898, 904 (9th Cir. 2009)). The regulation "must not be underinclusive, such that it undermines and counteracts the interest the government claims it adopted the law to further." Id. (internal quotations omitted). Harel argues that the exceptions to the ban undermine and counteract the County's interests in creating the billboard ban in the first place. Harel identifies the 22,550 square-foot sign at the Palms, the 27,600 square-foot sign at Allegiant Stadium, and the 62,550 square-foot animated sign at Resorts World, all of which are visible from the I-15 freeway, as examples of the exceptions that undermine the County's interest in promoting traffic safety. Harel also argues that the billboard ban is not aimed at traffic safety and aesthetics when restricting the market for off-premises billboards benefits the County financially by limiting competition with the County's billboards. Because the sign regulations do not require any traffic studies or traffic impact analyses before the addition of new signs, Harel argues that they do not advance the interest of traffic safety.

  While the regulations and exceptions may not eliminate all traffic risk, the limitation on the overall number of signs in the county directly advances traffic safety. See e.g., World Wide Rush, LLC v. City of Los Angeles, 606 F.3d 676, 686 (9th Cir. 2009) (finding that some exceptions to a sign regulation that banned freeway-facing signs did not undermine the regulation's purpose.); see also, Metro Lights, LLC v. City of Los Angeles, 551 F.3d 898 (9th Cir. 2009) (finding that regulations prohibiting most offsite advertising while simultaneously contracting with a private party to permit the sale of such advertising at city-owned transit stops did not undermine the government's ability to materially advance its aim.). There is "not constitutional infirmity in [an] ordinance's failure to regulate every sign that it might have reached." Contest Promotions, 874 F.3d at 604. The regulation's general application advances the County's interests. The County's financial interest in billboards does not disqualify its other interests in the regulation. Even if the County profits from owning billboards, the billboard ban still advances traffic safety and aesthetics. Additionally, "a majority of Justices in Metromedia

held that an ordinance banning all offsite commercial signs while allowing onsite commercial signs nonetheless directly advances the government's interests in safety and esthetics." Outdoor Sys., Inc. v. City of Mesa, 997 F.2d 604, 611 (9th Cir. 1993). Because the regulation advances the County's substantial interests, it satisfies this prong of the Central Hudson test.

Fourth, the regulation must reach no further than necessary to accomplish the given objective. The Supreme Court has clarified this factor "by making it clear that it does not require satisfaction of a 'least-restrictive means standard,' but rather requires 'a fit between the legislature's ends and the means chosen to accomplish those ends, []a fit that is not necessarily perfect, but reasonable[,] . . . a means narrowly tailored to achieve the desired objective.'" Retail Digital Network, LLC v. Prieto, 861 F.3d 839, 846 (9th Cir. 2017) (quoting Bd. of Trs. of State Univ. of N.Y. v. Fox, 492 U.S. 469, 477 (1989) (alterations in original)). "A speech regulation is narrowly tailored if it 'promotes a substantial government interest that would be achieved less effectively absent the regulation.'" Lone Star Security and Video, Inc. v. City of Los Angeles, 827 F.3d 1192, 1200 (9th Cir. 2016) (quoting Ward v. Rock Against Racism, 491 U.S. 781, 799 (1989)). The County's interests of traffic safety and aesthetic appeal would be achieved less effectively absent this regulation and the regulation is therefore narrowly tailored. It limits the overall number of signs in the county which promotes traffic safety and preserves the aesthetic appeal of the community. Because the regulation is narrowly tailored and reaches no further than necessary, it passes the fourth prong of the Central Hudson test.

The Ninth Circuit has "relied on Metromedia to uphold sign ordinances that distinguish between onsite and offsite signs when that distinction does not also prevent the erection of on-site non-commercial signs." Clear Channel Outdoor, Inc. v. City of Los Angeles, 340 F.3d 810, 814 (9th Cir. 2003) (abrogated on other grounds by Stormans, Inc. v. Selecky, 586 F.3d 1109 (9th Cir. 2009)). The County's regulation follows that framework, satisfies the Central Hudson test, and is upheld.

### B. Strict Scrutiny

Harel also argues that strict scrutiny should be applied because the regulation favors resort hotels and recreational facilities over other speakers. Speaker-based restrictions are subject

to strict scrutiny. The Supreme Court "has cautioned that speaker-based regulations 'are all too often' content-based regulations in disguise." Boyer v. City of Simi Valley, 978 F.3d 618, 621 (9th Cir. 2020) (citing Reed, 576 U.S. at 163). When a regulation makes speaker-based distinctions, the court asks whether the speaker preference reflects a content preference, and if it does, courts "treat it the same as any other content-based regulation and apply strict scrutiny." Id. The amendment to the billboard ban treats resort hotels and recreational facilities differently than other business owners. They may be approved for off-premises signs where other business owners would not be approved. The Court views this as a speaker preference. However, the Court does not see a content preference. There is no evidence in the record that the exception carved out for resort hotels and recreational facilities was established to promote certain content, messages, or viewpoints. The evidence shows that the exception was carved out to promote economic growth in the County's most highly visited tourist area. Because the speaker preference does not reflect a content preference, the amendment to the billboard ban is not subject to strict scrutiny.

### C. Remaining Claims

Harel also brought an Equal Protection claim, a Due Process claim, and a Nevada constitutional claim. The Court also grants summary judgment to the County on these claims.

The Fourteenth Amendment states that "[n]o State shall . . . deprive any person of life, liberty, or property without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. The Amendment "is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne, Tex. v. Cleburne Living Center, 473 U.S. 432, 439 (1985). Heightened scrutiny applies only when there is a classification based on gender or a suspect class or there is an interference with the exercise of a fundamental right. See Mass. Bd. of Retirement v. Murgia, 427 U.S. 307, 312 (1976) ("[E]qual protection analysis requires strict scrutiny of a legislative classification only when the classification impermissibly interferes with the exercise of a fundamental right or operates to the peculiar disadvantage of a suspect class."); see also United States v. Virginia, 518 U.S. 2264, 2286 (1996) ("[A]ll gender-based classifications today warrant heightened scrutiny." (internal

quotations omitted)). "In applying the Fourteenth Amendment to most forms of state actions, reviewing courts should 'seek only the assurance that the classification at issue bears some fair relationship to a legitimate public purpose.'" Hoffman v. United States, 767 F.2d 1431, 1436 (9th Cir. 1985) (quoting Plyler v. Doe, 457 U.S. 202, 216 (1982)). Harel cannot show that the billboard ban does not have a fair relationship to a legitimate public purpose. As stated previously, the County's interest in maintaining its aesthetic appeal and promoting traffic safety are legitimate purposes. The regulation advances those interests. The Constitution "does not require things which are different in fact or opinion to be treated in law as though they were the same." Tigner v. Texas, 310 U.S. 141, 147 (1940). Harel's proposed billboard on residential property does not need to be treated the same as billboards at resort hotels. Because the regulation passes rational basis review, Harel cannot prevail on its Equal Protection claim.[1]

Harel's due process claim also fails. Harel, in a single paragraph, argues that the sign regulations are impermissibly vague. The regulations allow off-premises signs "for a use holding a business license issued in conjunction with a Resort Hotel." According to Harel, it is impossible to understand what falls under that exception and such vagueness chills protected speech. A "procedural due process claim has two elements: deprivation of a constitutionally protected liberty or property interest and denial of adequate procedural protection." Krainski v. Nevada ex rel. Bd. of Regents of Nev. Sys. of Higher Ed., 616 F.3d 963, 970 (9th Cir. 2010). Harel has not argued that it has a property interest in constructing a billboard on residential property. The interest that has allegedly been deprived from Harel concerns chilled protected speech. "The standard for unconstitutional vagueness is whether the statute 'provide[s] a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement.'" Maldonado v. Morales, 556 F.3d 1037, 1045 (9th Cir. 2009) (quoting United States v. Williams, 553 U.S. 258, 304 (2008)). The sign regulation provides a person of ordinary intelligence fair notice of what is prohibited. The term "use" that Harel argues is impermissibly vague, is defined in the county code and there is no

---

[1] Additionally, Harel's Equal Protection claim is subsumed by the First Amendment claim. Orin v. Barclay, 272 F.3d 1207, 1213 n.3 (9th Cir. 2001).

1  evidence that the regulation authorizes or encourages seriously discriminatory enforcement.
2  Additionally, the "settled law of this circuit is that the commercial/non-commercial and
3  onsite/offsite distinctions are not unconstitutionally vague." Id. The regulation is not
4  unconstitutionally vague, and the chilling effect claim fails because it is "dependent on the
5  statute's alleged unconstitutional vagueness." Maldonado, 556 F.3d at 1046.
6      Finally, because the state constitutional claims mirror the federal constitutional claims,
7  which fail, the state claims must also fail. The Nevada constitution follows the federal
8  constitution on these issues. See e.g., In re Candelaria, 245 P.3d 518, 523 (Nev. 2010) ("The
9  standard for testing the validity of legislation under the equal protection clause of the state
10 constitution is the same as the federal standard."); see also Reinkemeyer v. Safeco Ins. Co. of
11 America, 16 P.3d 1069, 1072 (Nev. 2001) (The Due Process Clause of the Nevada Constitution
12 "virtually mirror[s] the language in the United States Constitution" and courts "look to federal
13 caselaw for guidance."); see also Cardenas-Ornelas v. Wickham, No. 2:21-cv-00030-APG-VCF,
14 2021 WL 1907827, at *15 (D. Nev. May 11, 2021) ("Article 1, Section 9 of the Nevada
15 Constitution provides free speech protection that are coextensive with the First Amendment to
16 the United States Constitution."). Because the state constitutional claims mirror the federal
17 constitutional claims, and the federal constitutional claims fail, the state claims fail as well.
18 //
19 //
20 //
21 //
22 //
23 //
24 //
25 //
26 //
27 //
28 //

IV. Conclusion

Accordingly, IT IS HEREBY ORDERED that Plaintiff's Motion for Partial Summary Judgment (ECF #32) is **DENIED**.

IT IS FURTHER ORDERED that Defendant's Motion for Summary Judgment (ECF #31) is **GRANTED**.

IT IS FURTHER ORDERED that Defendant's Motion to Strike (ECF #48) is **DENIED**.

IT IS FINALLY ORDERED that Defendant's Motion for Leave to File Sur-Reply (ECF #49) is **GRANTED**.

Dated this 2nd day of September, 2021.

Kent J. Dawson
United States District Judge